RECORD IMPOUNDED

 NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION
 This opinion shall not "constitute precedent or be binding upon any court."
 Although it is posted on the internet, this opinion is binding only on the
 parties in the case and its use in other cases is limited. R. 1:36-3.

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-0722-16T4

NEW JERSEY DIVISION OF CHILD
PROTECTION AND PERMANENCY,

 Plaintiff-Respondent,

v.

J.W.,

 Defendant-Appellant,

and

K.S.,

 Defendant.
___________________________________

IN THE MATTER OF THE GUARDIANSHIP
OF T.W., a minor.
___________________________________

 Submitted September 25, 2017 - Decided October 13, 2017

 Before Judges Accurso, O'Connor and Vernoia.

 On appeal from Superior Court of New Jersey,
 Chancery Division, Family Part, Hudson
 County, Docket No. FG-09-0255-15.

 Joseph E. Krakora, Public Defender, attorney
 for appellant (Albert M. Afonso, Designated
 Counsel, on the brief).
 Christopher S. Porrino, Attorney General,
 attorney for respondent (Andrea M.
 Silkowitz, Assistant Attorney General, of
 counsel; Lauren J. Oliverio, Deputy Attorney
 General, on the brief).

 Joseph E. Krakora, Public Defender, Law
 Guardian, attorney for minor (Karen A.
 Lodeserto, Designated Counsel, on the
 brief).

PER CURIAM

 Defendant J.W. appeals from a final judgment terminating

her parental rights to her third child, Tamika,1 now almost four

years old. She contends the Division of Child Protection and

Permanency failed to prove prongs two through four of the best

interests standard of N.J.S.A. 30:4C-15.1a(2)-(4) by clear and

convincing evidence. The Law Guardian joins with the Division

in urging we affirm the judgment. Having considered defendant's

arguments in light of the record and controlling law, we affirm

the termination of her parental rights.

 The facts are fully set forth in Judge DeCastro's

comprehensive seventeen-page opinion, and need not be repeated

here. We note only that J.W. came to the Division's attention

in 2008, when she tested positive for PCP at the birth of her

first child. She also tested positive at the birth of her

1
 This name is fictitious to protect the child's identity.

 2 A-0722-16T4
second child in 2010. Both children now live with relatives in

kinship legal guardianships.

 J.W. again tested positive for PCP in 2014 at Tamika's

birth. The baby suffered severe withdrawal symptoms, including

inability to sleep, extreme tremors, vomiting, sneezing and

arching her back. She required morphine and spent over two

months in the hospital being weaned from the drugs. The

Division removed her from her mother at discharge and placed her

shortly thereafter in the resource home where she has since

remained.

 Over the next two years, the Division attempted to assist

defendant in overcoming her drug problem and provided supervised

visitation to allow her to bond with the child her drug

addiction prevented her from raising. Its efforts were largely

unsuccessful. Defendant resisted in-patient treatment,

insisting she could better address her addiction through an

outpatient program on her own. She continued to often test

positive for PCP or alcohol, doing so as recently as three

months before trial in 2016.

 Defendant visited Tamika twice a week for the first

eighteen months of her life, although she sometimes arrived late

or failed to show up. She stopped visiting entirely, however,

for almost a year from September 2015 until June 2016 without

 3 A-0722-16T4
explanation, resuming her visits only three months before trial.

The Division worker supervising those recent visits testified

they were hard on the toddler. Although defendant was well

disposed toward her daughter, the child cried and tried to leave

the room.

 The Division had defendant evaluated twice, first in June

2015 and again in May 2016. The results of those evaluations

were almost identical. Defendant told the psychologist she

started using PCP when she was eighteen and was still using it

weekly when Tamika was born seven years later. She had not held

a job in a long time, lived with her mother or one of her

sisters and got by on assistance and food stamps.

 The psychologist found no diagnosable psychiatric illness,

but testified defendant was in no position to parent based on

her untreated drug addiction. He opined she had no insight into

her problem and no plan to address it. He testified the

difficulty in overcoming a PCP addiction, and defendant's

failure to avail herself of treatment opportunities, made it

highly unlikely she would be able to sustain any remission she

managed on her own. He testified that returning Tamika to

defendant in the absence of sustained remission would expose the

child to serious harm.

 4 A-0722-16T4
 The same psychologist conducted two bonding evaluations

between defendant and Tamika. During the first evaluation in

2015, the child was just under two years old. Although the

psychologist observed that defendant was affectionate toward her

daughter, the baby responded indifferently, and there were

almost no reciprocal interactions between them. He found

little, if any, attachment. When the psychologist saw the two

together again the following year, Tamika avoided eye contact

and even resisted her mother's attempt to hug or cuddle her.

The expert found no evidence of any bond between the two.

 The psychologist testified that his observations of Tamika

and her resource mother stood in stark contrast to the

interactions between Tamika and defendant. Tamika sought her

resource mother's attention, who responded accordingly. Their

interaction was spontaneous, warm and lively. The expert

testified that the foster mother provided Tamika security and

comfort, and the bond between the two was reciprocal and strong.

He concluded that severing the bond between them would cause the

child severe and enduring harm.

 Defendant did not present an expert but testified in her own

behalf that she wanted to be a parent to her daughter. She

acknowledged past mistakes, but claimed she was on a different

path now. She told the court she had gotten a job three weeks

 5 A-0722-16T4
before, had resumed visits with her daughter, was attending

parenting classes and had not used PCP in the last two months.

Although expressing her willingness to take a drug test, she

conceded it would likely be positive because the PCP she took two

months before would still be in her system.

 Applying the statutory factors, N.J.S.A. 30:4C-15.1a, to

the facts adduced at trial, Judge DeCastro entered a judgment

terminating defendant's parental rights. The judge concluded

there was no question but that defendant had caused Tamika

actual harm by "failing to get treatment for her longstanding

PCP addiction," resulting in the child suffering severe

withdrawal symptoms at birth. She found defendant has never

been able to support her daughter or provide her a safe and

stable home. Defendant refused services, was unwilling to get

the drug treatment she needs and does not acknowledge the risks

her continuing addiction pose to Tamika.

 Relying on the credible testimony of the Division's expert,

the judge found defendant could not safely parent Tamika now or

in the foreseeable future. Judge DeCastro concluded that there

were "simply no alternatives to termination." The Division

explored and ruled out all relatives offered. There were no

viable placements and the child was "happy and well cared for"

by a resource family willing to adopt her. In light of those

 6 A-0722-16T4
facts, the court concluded the Division had "met its burden of

proving by clear and convincing evidence that termination of the

defendant's parental rights will not do more harm than good."

 Defendant appeals, presenting arguments contained in a single

point with multiple subparts:

 THE TRIAL COURT FAILED TO PROPERLY APPLY THE
 PREVAILING LEGAL STANDARD AND THE DIVISION
 FAILED TO PROVE THE FOUR PRONGS OF THE "BEST
 INTEREST" STANDARD CODIFIED IN N.J.S.A. 30:4C-
 15.1 BY CLEAR AND CONVINCING EVIDENCE.

 A. THERE IS NO CLEAR AND
 CONVINCING EVIDENCE THAT J.W. IS
 UNWILLING OR UNABLE IN THE
 FORSEEABLE FUTURE TO ELIMINATE THE
 HARM FACING [TAMIKA].

 B. THE DIVISION FAILED TO
 CONSISTENTLY PROVIDE REASONABLE
 EFFORTS TO J.W. BY FAILING TO
 FOSTER HER RELATIONSHIP WITH
 [TAMIKA].

 C. THERE IS NO CLEAR AND
 CONVINCING EVIDENCE THAT
 TERMINATION OF PARENTAL RIGHTS
 WILL NOT DO MORE HARM THAN GOOD
 UNDER THE FOURTH PRONG.

 We find no merit in these arguments and affirm

substantially for the reasons set forth in Judge DeCastro's

comprehensive and well-reasoned written opinion of September 29,

2016.

 Affirmed.

 7 A-0722-16T4